I'm a clinical professor at the University of Iowa College of Law, and I'm here today to supervise Rochelle Vasquez, who represents, along with me, Nathan Newell, the appellant. Thank you. Welcome. Proceed to the argument when you're ready. And that podium does adjust if you want it up or down. There's a button down there if you wanted to. Thank you, your honors. May it please the court, this case centers around the fact that the district court didn't make the proper individualized findings as required by 18 U.S.C. 3583D prior to modifying Mr. Newell's conditions. Additionally, these modifications are an abuse of discretion because there's no evidence in the record to support it. Thus, this court should vacate the imposition of both the polygraph and the internet limitation condition and remand to the district court for the government to prove its burden that these conditions are warranted. In addition, we raise challenges to the district court findings that Mr. Newell violated two of his conditions. I will not address these challenges today unless the court has questions for me. As a preliminary matter, the standard of review is abuse of discretion and not plain error. Are you sure it's not, not, is it clear error? You know the difference, clearly erroneous, like fact finding? You know what I'm referring to? If the district court finds facts, usually the standard is, was the district court clearly erroneous in finding the facts? Your honor, based on the case law, I do believe it is abuse of discretion and not clear error. And that can be seen in the Glover case. Were there facts found here? That would be the linchpin. There were no facts here found, your honor. Thanks. And in fact, in both the polygraph and the internet condition, the government doesn't argue that there was facts found, only that it can be discerned from the record under Thompson. For those reasons, abuse of discretion is proper. I don't mean to, I don't mean to torture you just for fun. Many of these cases are decided on the standard of review. And on the individualized assessment, the defendant here didn't ask for individual factors or anything like that, right? No, your honor, that's actually incorrect. District court document 46, we raised written objections. Okay. At page two at the court document 46 with regard to the polygraph testing, Mr. No objects to the addition of the condition that this new condition, excuse me, is unjustified by the facts of this case. Unconstitutionally overbroadens problematic due to the unreliable nature of the polygraph examination results. In regards to the internet at page, same document, page three, in regards to the internet restriction, there are two reasons why this new restriction is inappropriate in this case. First, the scope is significantly broader than the existing special condition and is a greater restriction than is reasonably necessary under 18 U.S.C. 3552. In order to justify modification to these conditions, the court must make individualized findings and consider the sentencing factors in 18 U.S.C. 3553A. Thank you. Oh, yes. Even if this court feels like we did not raise based on individual findings, under Glover it's not necessary given that the demand for an individualized review is a natural extension of the general requirement that a condition involve no greater deprivation of liberty than is reasonably necessary. So simply by raising those objections, it triggers the natural extension to have the individualized review. In respect to the polygraph condition, the district court did not make the proper individualized findings under 18 U.S.C. 3583D prior to imposing a general investigative polygraph condition outside the context of sexual offender treatment. As stated previously, the government doesn't argue that the district court made these individualized findings, but that it can be discerned from the record. The government relies on lack of candor and protection to the public. In regards to lack of candor, we don't dispute that Mr. Newell violated two of his conditions by not answering truthfully to probation. However, these two violations don't amount to the imposition of this general investigative polygraph condition outside the context of sexual offender treatment. These violations found through Newell's adherence to the already imposed polygraph and the conditions to answer truthfully to probation means that these conditions were working. It's important to note that this court is to work from the least restrictive means to ensure that there is no greater deprivation of liberty than is reasonably necessary. And these two conditions, answering truthfully to probation and having the polygraph inside the context of sexual offender treatment, does just that. Again, the district court does argue that this new imposition of the polygraph outside the context of sexual offender treatment is just merely spelling it out, as can be seen in page 10 and 25 of the transcript. But that's simply not the case. In 2011, his condition stated that the defendant must participate in mental health evaluation and or a treatment program. This may include participation in a sex offender treatment program or any such similar program offered in the defendant's approved district of residence. The defendant must take all medications as prescribed to the defendant. This new condition is vastly different. It states, the defendant will be required to submit to periodic polygraph testing at the discretion of the United States Probation Office as a means to ensure that the defendant is in compliance with the requirements of defendant supervision or treatment program. Now, in 2011, although there wasn't an express stating in special condition 2 that Mr. Newell must comply with polygraph testing in the context of sexual offender treatment, but we know by case law in this circuit that he must comply. And we don't object to that, Your Honor. But this new condition is vastly different. It broadens out to the probation office using its discretion and it asks to ensure the requirements of defendant supervision. That's not what spelling it out merely means. But isn't there really, you know, there's implicit fact findings here that really were undisputed in just a lot of ways. There's like contact on three separate occasions with minors, one of which can only be described as a willful violation. The buying of the cookies from the Girl Scout, you know, I mean, you basically seek out this transaction. It's not necessary for anything else. So you've got that. And then you've got the lack of candor. And aren't those facts alone sufficient to sustain the modification as relates to polygraphing? No, Your Honor, it does not. Why not? These violations that we don't contest that are factually true all revolve around sex offender treatment. And so sex offender treatment with the polygraph testing caught these very violations. And so I think the imposition of this general investigative polygraph condition outside the context of sexual offender treatment will become more relevant is when Mr. Newell actually completes sexual offender treatment in which he wouldn't be subjected to a polygraph testing. In fact, the district court gave the sexual offender treatment, whoever is ever administering it, to look over these facts and to catch these violations. And they were doing just that. In regards to protection to the public, outside the nature and circumstances of the underlying offense, there's no evidence to suggest that Mr. Newell is more dangerous now than he was originally charged without any of these conditions. Two of the contacts Mr. Newell admitted is fleeting at best. He saw his uncle's grandson on occasions when the kid was brought by the uncle. And as mentioned before, the Girl Scout cookies purchase, we dispute whether that was even contact itself. Furthermore, as stated previously, when the imposition of this condition will become more relevant is when Mr. Newell had completed his sexual offender treatment. And then we could get into the discussion of whether that imposition would be warranted. In regard, I see that I ran into my rebuttal time, but I'd just like to briefly go over the Internet condition. It's your time, but it is ticking. Yes, Your Honor. In regards to the Internet condition, again, the government doesn't argue that the district court made the individualized findings, but it can be discerned from the record. The government relies on the underlying nature and circumstances of the offense to warrant this Internet limitation. First, none of the violations currently stemmed from the Internet, and these two conditions are vastly different. And for those reasons, we ask this court to vacate these impositions and remand for further findings. Thank you. Thank you, Ms. Vasquez. And you'll have a full minute when you come back. May it please the court. I'm Tony Morphin. I'm arguing this case on behalf of Mark Tremel, who handled it at the district court level and wrote the government's brief in this matter. I'd first like to address a couple of issues that the court has pinpointed. First, there were factual findings in this case. On the bottom of page 13 of the revocation hearing transcript and onto page 14, the district court judge finds factually that the defendant violated the three conditions, including multiple violations of the no-contact condition and the truthfulness condition. So those are the factual findings the court ultimately based the modified conditions on. After making those factual findings, the district court allowed the defendant to make legal arguments about why they shouldn't be considered violations, but ultimately she did find that all six violations had occurred. The other issue is the government isn't conceding that the district court failed to make individualized findings. The Thompson case is a backup, an alternate way that this court could affirm the district court. Here there were the findings that were made, the factual findings on page 13, and then the judge discussed the, on page 25 and onto 26 of the revocation hearing, the judge discussed why those modified conditions were appropriate. It's not the most robust record that has ever been made for conditions, but there is discussion in this record. And furthermore, under Thompson, there are good reasons. Actually, a little bit more than that, if you go back to page 23, as she talks about the findings of fact, and I can see that some of them are unrelated to the particular issues argued here today, but there's a clear statement that she's making a reference back to the findings because she starts off by saying, I reaffirm all my previous findings, and then she kind of goes through it. So if you take it as a whole, there's a more robust set of facts than at least what was argued. Yes, Your Honor, I would agree. And, of course, this court can look at the entire record, which includes the pre-sentence report. And in this case, there are a number of factors that justify both the polygraph, the expanded polygraph condition, if that's how you want to refer to it, as well as the Internet restriction. Cases from this court that have approved these conditions look at a number of factors. Most of those are present here. The defendant's offense with the child pornography involved prepubescent children as well as sadistic imagery. He engaged in file sharing via a peer-to-peer software called LimeWire. He had a large number of images. Three to 600 is what he was the sentencing enhancement that he received. What about the evidence on the polygraph requirements? What evidence supports that, Your Honor? I would point to, first, the prepubescent and the sadistic imagery. This court has held in Mullenbrook and its progeny or its line of cases that those are two factors justifying the need for a poly because that individual needs to be monitored more closely. But perhaps even more importantly in this case is the defendant's lack of candor. The judge found that two of his violations were lying to his probation officer. Once she made those factual findings, that's a reason in and of itself to require him to answer a polygraph. And importantly in this case, the two violations, the fact that he had had contact with a couple of these minors on two occasions, only came out because of the polygraph, showing the importance of this condition and the need for it with this defendant. And finally then on the Internet restriction, the distribution by this defendant is a reason for that restriction. When initially sentenced, he was given a two-level enhancement for distribution, showing that the court found that he was engaged in the distribution of child pornography via limewire. So the record in this case is sufficient to support both of these conditions. It's important to remember the judge did not send this defendant back to prison. He modified his conditions, and those modifications are supported by the record and by the evidence that this court can consider. If there are no further questions, I would yield the remainder of my time. Okay, thank you very much. Ms. Vasquez? Your Honors, I agree that there were factual findings. I misspoke. There were no individualized findings. And it is our position that those findings do not support both the modification of the polygraph and the Internet condition. In respect to the polygraph, the government makes the argument that the threat of the polygraph is how we found these violations, which is why the imposition of a more broader polygraph is sufficient. But there's no evidence in the record to support that the threat of the polygraph itself is what led Mr. Newell to answer to these violations. In fact, Mr. Newell, 12 days prior to the polygraph, admitted to one of the contacts on March 29th. And then the other contacts were in discussion with the pretest of the polygraph and then after. So it's not really clear from the record whether the threat of the polygraph itself is what made Mr. Newell admit to these violations. Thank you. Thank you for the argument. Is Mr. Martin here, too? He is, Your Honor. Okay, good. And I would just recognize him at this time because I noticed that he is on brief. Ms. Guernsey? I'll have him stand for the court. Yeah, that'd be great. Thank you, Mr. Martin, for the brief. And in fact, if I understand the nature of this appointment, it's really under the Criminal Justice Act. That is correct, Your Honor. Well, listen, thank you. That's very nice of you all to do. Appreciate the argument. Case number 18-2066 is submitted for decision.